

U.S. Department of Justice

*Criminal Divison*
*Fraud Section*

---

*970 Broad Street, 7th floor*       *202-262-3520*
*Newark, New Jersey 07102*

February 17, 2023

Alan L. Zegas
Law Offices of Alan L. Zegas
374 Millburn Avenue, Suite 202E
Millburn, New Jersey 07041
azegas@zegaslaw.com

**RECEIVED**
MAR 2 1 2023
AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

    Re:    <u>Plea Agreement with Reyad Salahaldeen</u>
            Criminal Action No. 20-839-1 (MAS)

Dear Mr. Zegas:

    This letter sets forth the plea agreement between your client, Reyad Salahaldeen, and the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney for the District of New Jersey ("this Office"). This offer will expire on March 1, 2023, if it is not accepted in writing by that date. If Reyad Salahaldeen does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

<u>Charge</u>

    Conditioned on the understandings specified below, this Office will accept a guilty plea from Reyad Salahaldeen to Count 1 of the Indictment, Criminal No. 20-cr-839, which charges Reyad Salahaldeen with Conspiracy to Commit Health Care Fraud and Wire Fraud. If Reyad Salahaldeen enters a guilty plea and is sentenced on this charge and otherwise fully complies with this agreement, this Office will not initiate any further criminal charges against Reyad Salahaldeen for his flight to avoid prosecution on September 29–30, 2020. In addition, if Reyad Salahaldeen fully complies with this agreement, at sentencing, this Office will move to dismiss Counts 2–10 of the Indictment, Criminal No. 20-cr-839, against Reyad Salahaldeen.

    But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, this Office may reinstate any dismissed charges and initiate any other charges against Reyad Salahaldeen even if the applicable statute of limitations period for those charges expires after Reyad Salahaldeen signs this agreement, and Reyad Salahaldeen agrees not to assert that any such charges are time-barred.

Sentencing

The violation of 18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud and Wire Fraud) to which Reyad Salahaldeen agrees to plead guilty in Count 1 of the Indictment carries a statutory maximum prison sentence of 20 years and a statutory maximum fine equal to the greatest of (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon Reyad Salahaldeen is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551–3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. Those Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what Guidelines range may be found by the sentencing judge, or as to what sentence Reyad Salahaldeen ultimately will receive.

Further, in addition to imposing any other penalty on Reyad Salahaldeen, the sentencing judge as part of the sentence:

(1) will order Reyad Salahaldeen to pay an assessment of $100 pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing;

(2) may order Reyad Salahaldeen to pay restitution pursuant to 18 U.S.C. § 3663 *et seq.*;

(3) must order forfeiture, pursuant to 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), and 28 U.S.C. § 2461(c); and

(4) pursuant to 18 U.S.C. § 3583, may require Reyad Salahaldeen to serve a term of supervised release of not more than three years, which will begin at the expiration of any term of imprisonment imposed. Should Reyad Salahaldeen be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, Reyad Salahaldeen may be sentenced to not more than two years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Restitution

Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, Reyad Salahaldeen agrees to pay full restitution to the victims of the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense in an amount that fully compensates the victims for the losses sustained as a result of those offenses as follows:

| Victim | Amount |
|---|---|
| Medicare | $54,279,438 |
| Georgia Medicaid | $11,004,451 |
| Colorado Medicaid | $3,620,205 |
| UnitedHealthcare | $9,276,328 |
| Humana | $4,647,171 |
| Aetna | $1,687,559 |
| Blue Cross and Blue Shield of Alabama | $79,013 |

Forfeiture

As part of Reyad Salahaldeen's acceptance of responsibility, Reyad Salahaldeen agrees to forfeit to the United States of America, pursuant to 18 U.S.C. §§ 982(a)(7) and 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, Reyad Salahaldeen obtained that constitutes or was derived, directly and indirectly, from gross proceeds traceable to the conspiracy to commit health care fraud and wire fraud charged in Count 1 of the Indictment, and all property traceable to such property, which Reyad Salahaldeen agrees was approximately $84,594,165.

Reyad Salahaldeen further agrees that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, entitling the United States to forfeit substitute assets equal to the aggregate value of the forfeitable property described above, in an amount not to exceed $84,594,165 (the "Money Judgment"). Reyad Salahaldeen consents to the entry of an order at the time of his guilty plea requiring Reyad Salahaldeen to pay the Money Judgment, in the manner described below (the "Order"), and agrees that the Order will be final as to Reyad Salahaldeen prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

All payments made in full or partial satisfaction of the Money Judgment shall be made by (i) electronic funds transfer, as directed by this Office; or (ii) postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating Reyad Salahaldeen's full name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Jersey, Attn: Asset Recovery and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102. Reyad Salahaldeen agrees that this Office may conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed

with regard to proceeds or substitute assets, including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas.

Reyad Salahaldeen, individually and on behalf of Friends Real Estate Investment Group LLC ("Friends"), further agrees to forfeit all of Reyad Salahaldeen's right, title, and interest in the property listed on the attached Schedule B, which Reyad Salahaldeen admits has the requisite nexus to the conspiracy offense charged in Count 1 of the Indictment and is therefore forfeitable to the United States of America pursuant to 18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), and 28 U.S.C. § 2461(c) (the "Specific Property"). Reyad Salahaldeen, individually and on behalf of Friends, hereby consents to the entry of preliminary orders of forfeiture and orders for the interlocutory sale of the Specific Property pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure and/or Supplemental Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, as this Office may request. Reyad Salahaldeen understands and agrees that the list of property on Schedule B does not necessarily include all of the property Reyad Salahaldeen must forfeit. Reyad Salahaldeen further understands and agrees that Reyad Salahaldeen must forfeit all of Reyad Salahaldeen's right, title, and interest in all property Reyad Salahaldeen obtained that constitutes or was derived from gross proceeds traceable to the federal health care fraud offense charged in Count 1 of the Indictment, and all property traceable to such property; as well as substitute assets as necessary to satisfy the Money Judgment. Any forfeited money and the net proceeds from the disposition of the Specific Property will be applied to the Money Judgment, in partial satisfaction thereof.

Reyad Salahaldeen, individually and on behalf of Friends, further consents to the administrative and/or civil judicial forfeiture of the Specific Property pursuant to 18 U.S.C. § 981(a)(1)(C). Reyad Salahaldeen agrees that neither Reyad Salahaldeen nor friend will file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property and will not cause or assist anyone else in doing so. To the extent Reyad Salahaldeen has filed a claim or petition in any administrative or civil judicial forfeiture proceeding involving the Specific Property, such claims or petitions are deemed withdrawn (and on the request of this Office, Reyad Salahaldeen will execute a written withdrawal of any such administrative claims or petitions). For the avoidance of doubt, Reyad Salahaldeen specifically consents to the civil forfeiture of the defendants in rem in the parallel civil forfeiture case *United States v. Approximately $3,026,053.05,* No. 20-cv-12360 (MAS), and, if requested by this Office, agrees to execute a stipulation of settlement, individually and on behalf of Express Diagnostics LLC, relinquishing all right, title, and interest in the defendants in rem. Reyad Salahaldeen further agrees to take all necessary steps to pass clear title to the Specific Property to the United States, including, but not limited to, the surrender of such property to the United States Marshals Service and the execution of all necessary documentation.

Reyad Salahaldeen waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Reyad Salahaldeen understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise Reyad Salahaldeen of this pursuant to Fed. R. Crim. P. 11(b)(1)(J) at the guilty plea proceeding. Reyad Salahaldeen waives all constitutional, statutory, and other challenges to the forfeiture on all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment. Reyad Salahaldeen further understands that Reyad Salahaldeen has no right to demand that any forfeiture of Reyad Salahaldeen's assets be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon Reyad Salahaldeen in addition to forfeiture.

Reyad Salahaldeen further agrees that, not later than the date Reyad Salahaldeen enters the guilty plea, Reyad Salahaldeen will provide a complete and accurate Financial Disclosure Statement on the form provided by this Office. If Reyad Salahaldeen fails to do so, or if this Office determines that Reyad Salahaldeen has intentionally failed to disclose assets on the Financial Disclosure Statement, that failure constitutes a material breach of this agreement, and this Office reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

### Rights of This Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office may take any position with respect to the appropriate sentence to be imposed on Reyad Salahaldeen by the sentencing judge. This Office may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Reyad Salahaldeen's activities and relevant conduct with respect to this case.

### Stipulations

This Office and Reyad Salahaldeen will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A and the paragraph below, this Office and Reyad Salahaldeen waive certain rights to appeal, collaterally attack, or otherwise challenge the judgment of conviction or sentence.

Immigration Consequences

Reyad Salahaldeen understands that, if Reyad Salahaldeen is not a citizen of the United States, Reyad Salahaldeen's guilty plea to the charged offense will likely result in Reyad Salahaldeen being subject to immigration proceedings and removed from the United States by making Reyad Salahaldeen deportable, excludable, or inadmissible, or ending Reyad Salahaldeen's naturalization. Reyad Salahaldeen understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. Reyad Salahaldeen wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause Reyad Salahaldeen's removal from the United States. Reyad Salahaldeen understands that Reyad Salahaldeen is bound by this guilty plea regardless of any immigration consequences. Accordingly, Reyad Salahaldeen waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. Reyad Salahaldeen also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

Exclusion from the Medicare Program and Other Health Care Programs

Reyad Salahaldeen understands and acknowledges that as a result of this plea, Reyad Salahaldeen will be excluded from Medicare, Medicaid, and all federal health care programs. Reyad Salahaldeen agrees to complete and execute all necessary documents provided by any department or agency of the federal government,

including the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect Reyad Salahaldeen's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

Other Provisions

This agreement is limited to this Office and cannot bind other federal, state, or local authorities. If requested to do so, however, this Office will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Reyad Salahaldeen. So this agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against him.

No provision of this agreement shall preclude Reyad Salahaldeen from pursuing in an appropriate forum, when permitted by law, a claim that he received constitutionally ineffective assistance of counsel.

No Other Promises

This agreement constitutes the entire plea agreement between Reyad Salahaldeen and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

PHILIP R. SELLINGER
United States Attorney

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

*Rebecca Yuan*
Rebecca Yuan
Acting Assistant Chief
Gary Winters
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

I have received this letter from my attorney, Alan L. Zegas, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____     Date: 2/28/2023
Reyad Salahaldeen


I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____     Date: 2-28-2023
Alan L. Zegas, Esq.
Counsel for Defendant

## Plea Agreement With Reyad Salahaldeen

### Schedule A

1. This Office and Reyad Salahaldeen recognize that the United States Sentencing Guidelines do not bind the sentencing judge. Each party nevertheless agrees to these stipulations.

2. This Office and Reyad Salahaldeen agree to stipulate to the following facts:

   a. From 2018 through approximately August 2020, in the District of New Jersey and elsewhere, Reyad Salahaldeen knowingly and willfully conspired with others to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349.

   b. Reyad Salahaldeen and others defrauded Medicare, Medicaid, and commercial insurers, which are health care benefit programs affecting commerce, as defined in 18 U.S.C. § 24(b).

   c. Reyad Salahaldeen and others controlled four laboratories: Express Diagnostics, LLC, in East Brunswick, New Jersey; BioConfirm Laboratory USA, LLC and BioConfirm Laboratories, LLC in Doraville, Georgia; Tox Management, LLC (d/b/a Accurate DX) in San Antonio, Texas; and Tri-State Toxicology, LLC (d/b/a Definitive DX) in San Antonio, Texas (collectively hereinafter, "the Laboratories").

   d. In approximately January 2019, Reyad Salahaldeen submitted a Medicare Enrollment Application on behalf of Express Diagnostics in which he certified that he understood that payment of claims was conditioned upon the underlying claims complying with the federal anti-kickback statute, and in which he falsely certified that he would abide by all applicable Medicare laws, regulations, and program instructions, and that he would not knowingly present or cause to be presented false or fraudulent claims.

   e. Reyad Salahaldeen and others executed a scheme through which they obtained access to thousands of individuals' health insurance information and DNA material by targeting the individuals (who were Medicare and Medicaid beneficiaries and individuals with private insurance) through marketing campaigns that included telemarketing, door-to-door solicitation, appearances at health fairs, and other methods of in-person solicitation.

   f. As part of the scheme, the targeted individuals were induced to provide their DNA material for the purpose of performing genetic tests designed to assess the risks of cancer, adverse drug reactions, and other medical conditions. The genetic tests were performed without regard to whether they were medically

necessary and without the meaningful involvement of a health care professional who was treating the individual.

g. As a further part of the scheme, at the direction of Reyad Salahaldeen and others, purported marketers and others caused licensed medical providers to approve fraudulent orders for genetic tests, in some instances through telemedicine consultations, even though the providers were not treating the individuals for cancer or any other medical condition, did not conduct a patient visit or consultation that would justify approval of the orders for genetic tests, and did not use the test results in the treatment of the individuals.

h. Reyad Salahaldeen and others paid and caused the payment of illegal kickbacks and bribes to multiple purported marketers in exchange for fraudulent orders for genetic tests and DNA samples, which were used to support false and fraudulent claims to Medicare, Medicaid, and commercial insurers.

i. Reyad Salahaldeen and others created sham contracts, invoices, and other documentation that disguised the illegal kickbacks and bribes as payments for purported marketing services.

j. Reyad Salahaldeen and others caused the payment of illegal kickbacks and bribes to licensed medical providers, including telemedicine providers, in exchange for the providers approving fraudulent orders for genetic tests that were referred to the Laboratories.

k. Reyad Salahaldeen and others caused false laboratory requisition forms, letters of medical necessity, and chart notes to be created in order to falsely represent the medical necessity of the genetic tests.

l. Reyad Salahaldeen and others caused the Laboratories to bill Medicare, Medicaid, and commercial insurers approximately $522 million in false and fraudulent claims for genetic tests.

m. As a result of the false and fraudulent claims, Medicare, Medicaid, and commercial insurers paid the Laboratories approximately $84 million.

n. Reyad Salahaldeen and others used the fraud proceeds to benefit themselves and others, and to further the fraud.

o. On September 29–30, 2020, upon learning of the warrant for his arrest in this matter, Reyad Salahaldeen attempted to evade arrest and prosecution by traveling by vehicle from North Carolina to Texas and attempting to leave the United States and enter Mexico. Reyad Salahaldeen falsely presented his brother's identification to officials at the United States border with Mexico in a further attempt to evade arrest and prosecution.

3. The version of the Guidelines effective November 1, 2021, applies in this case.

4. The applicable guideline is U.S.S.G. § 2B1.1(a)(1). This guideline carries a Base Offense Level of 7.

5. The reasonable estimate of actual loss is more than $65,000,000, but less than $150,000,000, resulting in an increase of 24 levels. *See* U.S.S.G. § 2B1.1(b)(1)(M); *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022).

6. Reyad Salahaldeen's offense is a Federal health care offense involving a Government health care program, and the actual loss to Medicare, Georgia Medicaid, and Colorado Medicaid, Government health care programs, is more than $20,000,000, resulting in an increase of 4 levels. *See* U.S.S.G. § 2B1.1(b)(7).

7. Reyad Salahaldeen was an organizer and leader of extensive criminal activity that involved more than five participants, resulting in an increase of 4 levels. *See* U.S.S.G. § 3B1.1(a).

8. The Government reserves the right to argue at the time of sentencing that an increase of 2 levels applies under U.S.S.G. § 2B1.1(b)(10) because (1) Reyad Salahaldeen relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials, and/or (2) Reyad Salahaldeen's offense otherwise involved sophisticated means and Reyad Salahaldeen intentionally engaged in or caused the conduct constituting sophisticated means. Reyad Salahaldeen reserves the right to oppose an increase of 2 levels under U.S.S.G. § 2B1.1(b)(10).

9. As of the date of this letter, Reyad Salahaldeen has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility is appropriate if Reyad Salahaldeen's acceptance of responsibility continues through the date of sentencing. *See* U.S.S.G. § 3E1.1(a).

10. As of the date of this letter, Reyad Salahaldeen has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting this Office to avoid preparing for trial and permitting this Office and the court to allocate their resources efficiently. At sentencing, this Office will move for a further 1-point reduction in Reyad Salahaldeen's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) Reyad Salahaldeen enters a plea pursuant to this agreement, (b) this Office, in its discretion, determines that Reyad Salahaldeen's acceptance of responsibility has continued through the date of sentencing and Reyad Salahaldeen therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) Reyad Salahaldeen's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

11. Accordingly, the parties agree that, depending upon the sentencing court's resolution of the open Guidelines issue noted in paragraph 8 above, the total offense level applicable to Reyad Salahaldeen is either 36 or 38 (the "Total Offense Level").

12. Each party agrees not to advocate for any upward or downward adjustment or departure from the Guidelines range resulting from (a) the Total Offense Level that applies after the sentencing judge resolves the open Guidelines issue noted in paragraph 8 above and (b) the criminal history category that the sentencing judge applies under Chapter 4 of the Guidelines without any departure or variance. But each party may seek a variance from that Guidelines range, which the other party may oppose.

13. If the term of imprisonment does not exceed 240 months, and except as specified in the next paragraph below, Reyad Salahaldeen will not challenge or seek to reduce by any means any component of the sentence imposed by the sentencing judge for any reason other than ineffective assistance of counsel. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence. If the term of imprisonment is at least 240 months, this Office will not challenge by appeal, motion, or writ any component of the sentence imposed by the sentencing judge. The provisions of this paragraph bind the parties even if the sentencing judge employs a Guidelines analysis different from the one above.

14. Both parties reserve the right to file or to oppose any appeal, collateral attack, writ, or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

    (a) Any proceeding to revoke the term of supervised release.

    (b) A motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

    (c) An appeal from the denial of a § 3582(c)(1)(A) motion on the grounds that the court erred in finding no extraordinary and compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).

## Plea Agreement With Reyad Salahaldeen

## Schedule B

1. 2019 GMC Yukon XL Denali Utility VIN 1GKS2HKJ9KR255207;

2. Approximately $18,813.01 in funds from Bank Account Number XXXXXX3492 held in the name of Express Diagnostics at TD Bank, Mount Laurel, New Jersey;

3. Real property and appurtenances located at 2746 Painted Sunrise Trail, Houston, Texas 77045;

4. Real property located at 708 Salobre, Cibolo, Texas 78108;

5. Real property located at 2628 Bonar Hall Path, Duluth, Georgia 30097;

6. Real property designated as Parcel Nos. BR13 0090B, BR13 0096, BR13 0097, BR13 0098, BR13 0099, and BR13 0100 on the tax map of Haralson County, Georgia, and located on or near Buchanan Street, Breman, Georgia 30110; and

7. Approximately $3,026,053.05 in funds from an Attorney Trust Bank Account Number XXXXXXXX7972 in the name of Garland, Samuel & Loeb, P.C. at SunTrust Bank, Duluth, Georgia.